IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-06-357 (2) |
| | § | C.A. No. C-07-23 |
| PATRICIO DIAZ-RAMIREZ, | § | |
| | § | |
| Defendant/Movant. | § | |

ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE AND
ORDER DENYING CERTIFICATE OF APPEALABILITY

Pending before the Court is Patricio Diaz-Ramirez's ("Diaz") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 81.)[1] Also before the Court is the government's response, which moves for the dismissal of Diaz's motion. (D.E. 92, 93.) Pursuant to the Court's response orders (D.E. 82), Diaz was required to file his reply, if any, not later than May 14, 2007. (See D.E. 82 (reply due thirty days after service of the government's response); D.E. 92 at 13 (government served response by mail on April 10, 2007).) To date, the Clerk has not received a reply from Diaz. For the reasons set forth below, Diaz's § 2255 motion is DENIED. Additionally, the Court DENIES Diaz a Certificate of Appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1] Docket entry references are to the criminal case, Cr. No. C-06-357.

1

## II.  PROCEDURAL HISTORY

A.  **Summary of Offense**[2]

On April 17, 2006, the National Park Service ("NPS") and United States Cost Guard began an operation targeting illegal drug and alien smuggling occurring on the Padre Island National Seashore.  On April 21, 2006, at approximately 4:30 a.m., NPS Rangers observed a Chevrolet Suburban and Chevrolet pick-up truck traveling in tandem near the 5.0 mile marker of the National Seashore.  As the vehicles exited the seashore, the NPS notified a Nueces County, Texas Sheriff's Officer who was situated on Park Road 22 near Beach Access Road 6.  The sheriff observed the vehicles pass his location and, after requesting the assistance of the Corpus Christi Police Department, he initiated a traffic stop on the Suburban for failure to drive in a single lane.  Diaz was a passenger in the vehicle.

While the sheriff's officer was making contact with the driver and passengers in the Suburban, the CCPD officer observed that the Chevrolet pick-up truck was traveling fifteen miles below the posted speed limit and drifting onto the shoulder of the roadway.  The CCPD officer initiated a traffic stop and, as he approached the vehicle, observed several large rectangular bundles wrapped in grey duct tape in the front passenger area and behind the driver's seat.  The driver was arrested and more bundles in the truck's rear camper area were discovered.  There were a total of 107 bundles of marijuana with a net weight of 467.3 kilograms. The DEA was contacted and arrived, but Diaz declined to provide any statement.

According to others' debriefings, a boat containing the marijuana arrived at the National Seashore early on Friday, April 21, 2006.  Upon the boat's arrival, Diaz was waiting in the pick-up

---

[2]  The offense conduct as set forth herein is derived from Paragraphs 4 through 11 of Diaz's Presentence Investigation Report ("PSR").

truck. Diaz and other co-defendants, along with two boat pilots. unloaded the bundles of marijuana off of the boat and into the pick-up truck. The two pilots returned to Mexico in their boat.

**B.     Criminal Proceedings**

On May 18, 2006, Diaz was charged in both counts of a two-count indictment, along with four co-defendants. In Count One, he was charged with conspiring to possess with intent to distribute more than one hundred kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. In Count Two, he and his co-defendants were charged with aiding and abetting each other to possess with intent to distribute approximately 467 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. (D.E. 16.) On June 6, 2006, Diaz pleaded guilty to the indictment. (D.E. 34.) There was no written plea agreement. (Id.)

Pursuant to the Court's instructions, the probation department prepared a Presentence Investigation Report ("PSR"). The PSR calculated Diaz's base offense level to be 28, but increased the offense level by two levels on the grounds that Diaz used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, pursuant to U.S.S.G. § 3B1.4. (PSR at ¶¶ 18-22.) The PSR also reduced Diaz's offense level by three for acceptance of responsibility, and made no other adjustments. (PSR at ¶ 25.) Thus, his total offense level was calculated to be 27. (PSR at ¶ 28.) When coupled with his criminal history category of I, the resulting guideline range was 70 to 87 months. (PSR at ¶ 43.) Diaz, through counsel, filed a written objection to the two-level enhancement for use of a minor. (D.E. 44, 63.)

Diaz was sentenced on April 26, 2005. During sentencing, the Court upheld Diaz's objection to the two-level enhancement for use of a minor, and declined to apply that increase. (D.E. 91, Transcript of Sentencing ("S. Tr.") at 9-14.) Accordingly, his corrected offense level was 25, instead of 27, resulting in a guideline range of 57 to 71 months. (S. Tr. at 14.) Due to the statutory mandatory minimum in the case, the guideline range was actually 60 to 71 months. (S. Tr. at 14.)

The government recommended a sixty-month sentence and expressly noted that there had been no "safety valve debriefing." (S. Tr. at 14-15.) Defense counsel also asked for a sixty-month sentence on each count. (S. Tr. at 15.) The Court declined to impose a sentence at the low end of the guideline range, instead sentencing Diaz to 62 months in the custody of the Bureau of Prisons on each count, to be followed by a five-year term of supervised release on each count, to be served concurrently, and imposed a $100 special assessment on each count. (S. Tr. at 16-18.) Judgment was entered on September 27, 2006. (D.E. 66.)

Diaz did not appeal. Instead, he filed the instant § 2255 motion, which was received by the Clerk on January 18, 2007. (D.E. 81.) It is timely.

### III. MOVANT'S ALLEGATIONS

Diaz lists two grounds for relief in his motion and does not provide a supporting memorandum or brief. First, he claims that his conviction was obtained by use of evidence obtained pursuant to an unlawful arrest, because the officer that made the stop on the Suburban only said that the driver was driving recklessly and because a search of the SUV did not find anything illegal in it.

Second, he claims that he was denied effective assistance of counsel. Specifically, he faults his counsel for not obtaining an agreement with the prosecution, and also complains that counsel did not ask at sentencing for either a minimal role adjustment or for safety valve relief.[3] As discussed in detail herein, Diaz is not entitled to relief on any of his claims.

### IV. DISCUSSION

**A.   28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's

---

[3] The so-called "safety valve" is set forth at 18 U.S.C. § 3553(f) and in the Guidelines at § 5C1.2. It is discussed infra at Section IV.C.4.

4

jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

### B.     Procedural Bar

Where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings. See United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001); United States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000). A district court may consider a defaulted claim only if the movant can demonstrate either (1) cause for his default and actual prejudice; or (2) that he is factually innocent of the crime charged. Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999).

Diaz's second claim, i.e., his ineffective assistance claim, is not procedurally barred. Such a claim is properly made for the first time in a § 2255 motion because it raises an issue of constitutional magnitude and generally cannot be raised on direct appeal. United States v. Bass, 310 F.3d 321, 325 (5th Cir. 2002); United States v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992). Thus, it will be necessary to address the merits of his ineffective assistance claim, which the Court does herein.

His first claim, however, i.e., that the search and subsequent seizure of drugs from the pick-up constituted an "unlawful arrest," is a claim that should have been raised on direct appeal and was not. His failure to raise that claim precludes this Court's consideration of it as part of his § 2255 motion, unless Diaz can demonstrate either "cause and prejudice" or "actual innocence." Bousley, 523 U.S.

at 622; Jones, 172 F.3d at 384. Diaz has not alleged that he is actually innocent, nor has he alleged or shown cause and prejudice for his failure to raise this claim on appeal. Thus, this claim is procedurally barred. Moreover, even if it were not procedurally barred and properly before the Court, this claim fails because Diaz waived it by his unconditional guilty plea. See United States v. Cothran, 302 F.3d 279, 286 (5th Cir. 2002) (an unconditional guilty plea waives objections to searches and seizures that violate the Fourth Amendment). For these reasons, his first claim fails.

### C.    Ineffective Assistance of Counsel

#### 1.    General Standards

Diaz's ineffective assistance claims are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. U.S. v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"), cert. denied, 514 U.S. 1071 (1995); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

#### 2.    Failure to Obtain Plea Agreement

Diaz's first claim of ineffective assistance is that his counsel failed to obtain a plea agreement for him. Notably, there is no evidence in the record that any offer or agreement was made to Diaz, or

that Diaz would have accepted such an agreement. Thus, no deficiency on the part of his counsel has been shown. Moreover, Diaz cannot show prejudice. The typical agreement given by the U.S. Attorney in this district is one in which the government agrees to recommend the lowest end of the guidelines and full credit for acceptance of responsibility in exchange for a guilty plea. Diaz received both of these benefits, however, even without a plea agreement. (See S. Tr. at 14-15 (AUSA Booth recommending 60 months, the low end of the guideline range); PSR at ¶ 25 (giving Diaz three levels of credit for acceptance of responsibility).) Because Diaz has not shown that he lost any benefit as a result of not having a plea agreement, he cannot establish prejudice, either. This claim fails.

### 3. Failure to Seek a Reduction for Being Minor or Minimal Participant in the Offense

Diaz's final claims are ones that his counsel was constitutionally deficient due to errors at sentencing. In order for Diaz to show that he suffered prejudice as a result of counsel's ineffectiveness at sentencing, he must show that there is a reasonable probability that, but for counsel's alleged errors, the sentencing would have been different. See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000). This requires him to show a reasonable probability that he would have received a lesser sentence. United States v. Grammas, 376 F.3d 433, 438-39 (5th Cir. 2004). As discussed herein, there is no evidence to support any contention that, but for his counsel's alleged errors, Diaz would have received a lesser sentence.

Diaz first claims his counsel was ineffective for failing to obtain a reduction for him being a minor participant. Notably, the Court asked Diaz at sentencing whether there were any mistakes in the PSR, and Diaz testified that there were not. (S. Tr. at 16.) The Court also inquired of defense counsel whether there were other objections (other than the objection to the "use of a minor" enhancement), and he replied no. Diaz did not contradict his attorney or complain at that time.

7

Moreover, Diaz cannot establish prejudice as a result of this alleged failure. As an initial matter, even if his counsel had asked for a minor role reduction, it is unlikely that this Court would have granted the reduction. See United States v. Lujan-Sauceda, 187 F.3d 451, 452 (5th Cir. 1999) (neither a defendant's status as a first time offender nor his claims to be a courier require an adjustment for minor participant status). In particular, this conspiracy involved at least seven individuals (including the two boat captains and a juvenile male who were not named in the indictment), and at least one of those individuals did not know that he was helping to transport drugs until he was en route by boat to the United States. (PSR at ¶ 9.) Additionally, Diaz was the individual who drove the pick-up truck to meet the boat and, with the other individuals, helped unload the marijuana from the boat into the pick-up. (PSR at ¶ 10.) Under these facts, there is not a reasonable probability that Diaz would have qualified for a minor role reduction. Cf. Lujan-Sauceda, 187 F.3d at 452; U.S.S.G. § 3B, appl. n. 5 (a minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal"). Thus, he cannot show prejudice and his claim fails.

    **4.    Failure to Seek Safety Valve Relief**

Diaz's final allegation of ineffectiveness by his counsel is that his counsel failed to obtain for him the benefit of the safety valve. The safety valve allows the court to sentence certain defendants without regard to the statutory minimum. U.S.S.G. § 5C1.2. A defendant must meet all of the following criteria to be eligible for the safety valve:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;

8

>  (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

>  (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f). Although it appears from his PSR that Diaz met the first four requirements to qualify for safety valve relief, there is no evidence that he satisfied the fifth requirement for safety valve relief, i.e., that he truthfully debriefed to the government prior to sentencing. In fact, the government expressly noted at sentencing that there was no possibility of safety valve relief because Diaz did not debrief. (S. Tr. at 14-15.) Because he did not debrief, Diaz did not qualify for safety valve relief. Thus, there was no means for him to receive a sentence below the 60-month mandatory minimum and he cannot show either deficiency or prejudice as a result of his counsel's failure to ask for the application of the safety valve. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Additionally, Diaz cannot show prejudice because he cannot show a reasonable probability that he would have received a lesser sentence, had his counsel successfully argued for safety valve relief. With the safety valve, Diaz's guideline range would have been 57 to 71 months. Without it, his guideline range was 60 to 71 months. Even so, the Court did not sentence him to the bottom end of that guideline range or to the mandatory minimum, but sentenced him instead to 62 months. Thus, even if he had qualified for the safety valve and the Court could have imposed a sentence below the

60- month mandatory minimum, there is not a reasonable probability that the Court would have done so. Accordingly, this claim, like his other ineffective assistance claims, fails.

**D.**     **Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Diaz has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Diaz's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Similarly, as to the claims

that this Court has addressed on procedural grounds, the Court finds that Diaz cannot establish at least one of the <u>Slack</u> criteria. Specifically, jurists of reasons would not find this Court's procedural rulings debatable. Accordingly, Diaz is not entitled to a COA as to his claims.

## V. CONCLUSION

For the aforementioned reasons, Diaz's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 81) is DENIED. Additionally, Diaz is DENIED a Certificate of Appealability.

ORDERED this 11th day of June, 2007.

_____
Janis Graham Jack
United States District Judge